**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| INTERSTATE PATENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADT INC. and ADT LLC,<br><br>Defendants. | CIVIL ACTION NO. 4:26-cv-1533<br><br>ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Interstate Patents, LLC ("Interstate Patents" or "Plaintiff") files this original complaint against Defendants ADT Inc. and ADT LLC (collectively "ADT" or "Defendants"), alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This action concerns ADT's infringement of the following United States Patents (the "Asserted Patents"):

| U.S. Patent No. | Title |
|---|---|
| 8,163,591 | Backside Illuminated Image Sensor |
| 7,853,856 | Forming of Error Correction Data |
| 8,078,618 | Automatic Multimode System for Organizing and Retrieving Content Data Files |

## PARTIES

2. Interstate Patents is a limited liability company formed under the laws of the State of Texas, with its principal place of business at 1909 Lohman Ford Road, Lago Vista, TX 78645.

3. ADT Inc. is a corporation duly organized and existing under the laws of Delaware. ADT Inc. may be served through its registered agent The Corporation Trust Company at Corporation Trust Center 1209 Orange St., Wilmington, DE, 19801.

4. ADT LLC is a limited liability company duly organized and existing under the laws of Delaware. ADT LLC may be served through its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. ADT LLC does business as ADT Security Services and is a wholly owned subsidiary of ADT Inc.[1]

5. The Defendants identified in paragraphs 3–4 above are part of an interrelated group of companies which together comprise one of the largest providers of security, automation, and smart home solutions in the United States, and it sells, leases, installs, monitors, and services the accused products for residential and business customers throughout the United States.

6. The Defendants named above and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular.

**JURISDICTION AND VENUE**

7. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

[1] *See* https://investor.adt.com/financials/annual-reports/default.aspx (ADT Inc. Annual Report (Form 10-K) (3/2/2026))

8. This Court has personal jurisdiction over ADT pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) ADT has done and continues to do business in Texas; (ii) ADT has committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and/or sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein; and (iii) ADT LLC is registered to do business in Texas.

9. Venue is proper in this district as to ADT pursuant to 28 U.S.C. § 1400(b) and/or 28 U.S.C. § 1391. Venue is further proper because ADT has committed and continues to commit acts of patent infringement in this district, including making, using, offering to sell, and/or selling accused products in this district, and/or importing accused products into this district, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in this district, and/or committing at least a portion of any other infringements alleged herein in this district, including directing and/or controlling the performance of at least one step of each exemplary method claim in this district. ADT also has regular and established places of business in this district. For example, ADT's own website identifies ADT Security Services locations in this district at least at 215 Winchester Drive, Suite 105, Tyler, Texas 75701 and 4706 DC Drive, Tyler, Texas 75701.



## ADT Tyler Service Area

Our ADT Tyler team offers professional home security installation and a variety of security and automation products and solutions.

- Same-Day Installation
- 6-Month Money-Back Guarantee*
- 24/7 Live Phone Support

*Subject to certain restrictions

**ADT Security Services**
4706 DC Dr
Tyler TX 75701
United States
(903) 508-2818

**ADT Security Services**
215 Winchester Drive Suite 105
Tyler TX 75701
United States
(903) 206-0974

**Tyler Office Hours**
M-F 8am - 4pm
Sat/Sun Closed

Site: https://www.adt.com/local/tx/tyler

10. Additionally, the records of the Collin Central Appraisal District identify ADT property at 3010 Waterview Parkway, Richardson, Texas 75080, in Collin County, which is located in this district. That address is a data center facility that ADT uses to house computer and network equipment supporting the Accused Products, including, for example, ADT's cloud-based alarm monitoring, video storage, and/or ADT+ app services.

Collin CAD
Property Search

Homepage | Interactive Map | Taxpayer Portal | Agent Portal | Online Forms

Property ID: 2699549 For Year 2026

Print

**Property Details**

| | | | |
|---|---|---|---|
| **Account** | | | |
| **Property ID:** | 2699549 | **Geographic ID:** P-9000-214-2346-1 | |
| **Type:** | P | | |
| **Property Use:** | | **Condo:** | |
| **Location** | | | |
| **Situs Address:** | 3010 WATERVIEW PKWY RICHARDSON, TX 75080 | | |
| **Map ID:** | 128.M | | |
| **Legal Description:** | BPP AT FLEXENTIAL | | |
| **Abstract/Subdivision:** | | | |
| **Neighborhood:** | | | |
| **Owner** | | | |
| **Owner ID:** | 882098 | | |
| **Name:** | ADT LLC | | |
| **Agent:** | INTAX INC | | |
| **Mailing Address:** | % PROP TAX DEPT<br>PO BOX 310773<br>BOCA RATON, FL 33431-0773 | | |
| **% Ownership:** | 100.0% | | |
| **Exemptions:** | 145B -<br>For privacy reasons not all exemptions are shown online. | | |

**Property Values**

| | |
|---|---|
| **Personal Property Value:** | $3,119,292 |
| **Market Value:** | $3,119,292 |
| **Assessed Value:** | $3,119,292 |

Information provided for research purposes only. Legal descriptions and acreage amounts are for Appraisal District use only and should be verified prior to using for legal purpose and or documents.

Site: https://esearch.collincad.org/

11. ADT employs or otherwise controls individuals that work from these places of business in this district, and ADT's business specifically depends on such persons being physically present at such places to, for example, sell, install, service, and support the Accused Products for ADT's customers.

## THE ACCUSED PRODUCTS

12. ADT makes, uses, sells, offers for sale, leases, installs, provides, supplies, and/or distributes security, smart home, and automation products and services to residential and

business customers throughout the United States, including in Texas and in this district. *See* Exhibits 1–3.

13. ADT extensively promotes the Accused Products. For example, ADT advertises that its ADT+ app allows customers to "manage users, and access your cameras, saved media and alarm event history, all from your app, from virtually anywhere." *See* Exhibit 3.

14. ADT uses, causes to be used, makes, sells, offers for sale, leases, provides, supplies, and/or distributes security cameras, alarm communicators, smart home hubs and displays, software applications, and cloud-based services, including, but not limited to, the ADT Outdoor Camera (VMC3050-1ADNAS), the ADT Indoor Camera (VMC3060-1ADNAS), the ADT Doorbell Camera (AVD4001-1ADNAS), the ADT LTE Cellular Alarm Communicator (LE4000RF-ADTAT), the ADT+ app, the ADT Control app, the plus.adt.com web portal, the Google Nest Hub (2nd Gen) as offered by ADT, other substantially similar products and services offered in the past or the future, and all prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). *See* Exhibits 1–3.

15. Using the Accused Products, ADT and its customers capture, store, and view video and images from ADT cameras; transmit and receive alarm signals and other data over cellular LTE networks, including with forward error correction; and organize, filter, and retrieve saved media and event history through the ADT+ platform. *See* Exhibits 1–3.

16. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,163,591**

17. On April 24, 2012, United States Patent No. 8,163,591 ("the '591 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Backside Illuminated Image Sensor."

18. Interstate Patents is the owner of the '591 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '591 Patent against infringers, and to collect damages for all relevant times.

19. ADT made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its ADT-branded smart home security cameras that infringe the '591 Patent.

20. By doing so, ADT has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '591 Patent. *See* Exhibit 1. ADT's infringement in this regard is ongoing.

21. ADT's Outdoor Camera (VMC3050-1ADNAS), Indoor Camera (VMC3060-1ADNAS), and Doorbell Camera (AVD4001-1ADNAS) are exemplary accused products.

22. As shown in Exhibit 1, the exemplary ADT cameras correspond to camera models also sold under the Arlo brand (e.g., model nos. VMC3050-100NAS, VMC3060-100NAS, and AVD4001-100NAS) and, on information and belief, incorporate backside-illuminated CMOS image sensors, such as those supplied by OMNIVISION and/or Sony for smart home and security cameras. In operation, light is provided at the backside of the image sensor substrate and reflected onto the front side of the photodiode depletion region to generate and store a photoelectric charge, and a bias signal is applied at the front side of the depletion region to control its size. *See* Exhibit 1.

23. ADT directly infringes the ’591 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. ADT also directly infringes the ’591 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the steps of the claimed method after, for example, receiving light at the backside of the image sensor substrate. ADT also directly infringes the ’591 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., certification/testing providers), its authorized dealers and installers, and/or its customers and end-users. ADT contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved low-light sensitivity and image quality) from doing so. ADT conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., capturing video or images using the backside-illuminated image sensor).

24. ADT has had knowledge of the ’591 Patent at least as of August 20, 2026, when Interstate Patents sent ADT a letter identifying the ’591 Patent and enclosing a claim chart detailing ADT’s infringement of the ’591 Patent. *See* Exhibit 4.

25. Interstate Patents has been damaged as a result of the infringing conduct by ADT alleged above. Thus, ADT is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

26. Interstate Patents has neither made nor sold unmarked articles that practice the ’591 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the ’591 Patent.

**COUNT II**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,853,856**

27. On December 14, 2010, United States Patent No. 7,853,856 (“the ’856 Patent”) was duly and legally issued by the United States Patent and Trademark Office for an invention entitled “Forming of Error Correction Data.”

28. Interstate Patents is the owner of the ’856 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the ’856 Patent against infringers, and to collect damages for all relevant times.

29. ADT made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its ADT-branded LTE cellular alarm communicators that infringe the ’856 Patent.

30. By doing so, ADT has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 13 of the ’856 Patent. *See* Exhibit 2. ADT’s infringement in this regard is ongoing.

31. ADT’s LTE Cellular Alarm Communicator (model LE4000RF-ADTAT) is an exemplary accused product.

32. As shown in Exhibit 2, the ADT LTE Cellular Alarm Communicator (FCC ID F5317LE4000) is sold and installed as ADT-branded hardware and incorporates a Telit LE910-NA1 LTE module. The accused communicator receives data packets and error correction data packets and reconstructs missing data packets from the received data symbols and error

correction symbols, including in accordance with the forward error correction scheme specified in 3GPP TS 26.346. *See* Exhibit 2.

33. ADT directly infringes the '856 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. ADT also directly infringes the '856 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the claimed functionality after, for example, receiving one or more data packets and one or more error correction data packets. ADT also directly infringes the '856 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., certification/testing providers), its authorized dealers and installers, and/or its customers and end-users. ADT contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved reliability of alarm and data communications) from doing so. ADT conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the claimed functionality (e.g., after determining that not all transmitted data packets were received).

34. ADT has had knowledge of the '856 Patent at least as of August 20, 2026, when Interstate Patents sent ADT a letter identifying the '856 Patent and enclosing a claim chart detailing ADT's infringement of the '856 Patent. *See* Exhibit 4.

35. Interstate Patents has been damaged as a result of the infringing conduct by ADT alleged above. Thus, ADT is liable to Interstate Patents in an amount that adequately

compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

36. Interstate Patents has neither made nor sold unmarked articles that practice the ’856 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the ’856 Patent.

**COUNT III**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,078,618**

37. On December 13, 2011, United States Patent No. 8,078,618 (“the ’618 Patent”) was duly and legally issued by the United States Patent and Trademark Office for an invention entitled “Automatic Multimode System for Organizing and Retrieving Content Data Files.”

38. Interstate Patents is the owner of the ’618 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the ’618 Patent against infringers, and to collect damages for all relevant times.

39. ADT made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its ADT+ smart home platform and associated applications and display devices that infringe the ’618 Patent.

40. By doing so, ADT has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 21 of the ’618 Patent. *See* Exhibit 3. ADT’s infringement in this regard is ongoing.

41. ADT’s ADT+ platform (including the ADT+ app, the ADT Control app, and the plus.adt.com web portal), including as used with display devices offered by ADT such as the Google Nest Hub (2nd Gen), is an exemplary accused product.

42. As shown in Exhibit 3, the ADT+ platform stores customers’ saved media (e.g., video clips and images captured by ADT cameras) and event history in ADT’s cloud platform,

receives user requests for that content, and groups and presents the content on the display according to multiple different categorization methods, including by camera, date, media type, event type, device type, and detected object type (e.g., people, vehicles, and animals). *See* Exhibit 3.

43. ADT directly infringes the ’618 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. ADT also directly infringes the ’618 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the claimed functionality after, for example, receiving a user request for saved media or event history. ADT also directly infringes the ’618 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., certification/testing providers), its authorized dealers and installers, and/or its customers and end-users. ADT contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved organization and retrieval of saved media and event history) from doing so. ADT conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the claimed functionality (e.g., requesting and filtering saved media by camera, date, media type, event type, or device type).

44. ADT has had knowledge of the ’618 Patent at least as of August 20, 2026, when Interstate Patents sent ADT a letter identifying the ’618 Patent and enclosing a claim chart detailing ADT’s infringement of the ’618 Patent. *See* Exhibit 4.

45. Interstate Patents has been damaged as a result of the infringing conduct by ADT alleged above. Thus, ADT is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

46. Interstate Patents has neither made nor sold unmarked articles that practice the ’618 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the ’618 Patent.

**ADDITIONAL ALLEGATIONS REGARDING INFRINGEMENT AND PERSONAL JURISDICTION**

47. ADT has also indirectly infringed the ’591 Patent, the ’856 Patent, and the ’618 Patent, by inducing others to directly infringe the ’591 Patent, the ’856 Patent, and the ’618 Patent.

48. ADT has induced the end users and/or ADT’s customers to directly infringe (literally and/or under the doctrine of equivalents) the ’591 Patent, the ’856 Patent, and the ’618 Patent by using the accused products.

49. ADT took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringe one or more claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent, including, for example, claim 1 of the ’591 Patent, claim 13 of the ’856 Patent, and claim 21 of the ’618 Patent.

50. Such steps by ADT included, among other things, advising or directing customers, end users, and others (including distributors and equipment services entities) to use the accused products in an infringing manner; advertising and promoting the use of the accused

products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner.

51. ADT performed these steps, which constitute joint and/or induced infringement, with the knowledge of the ’591 Patent, the ’856 Patent, and the ’618 Patent and with the knowledge that the induced acts constitute infringement.

52. ADT was and is aware that the normal and customary use of the accused products by ADT’s customers would infringe the ’591 Patent, the ’856 Patent, and the ’618 Patent. ADT’s inducement is ongoing.

53. ADT has also induced its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates’ behalf, to directly infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the ’591 Patent, claim 13 of the ’856 Patent, and claim 21 of the ’618 Patent by importing, selling or offering to sell the accused products.

54. ADT has a significant role in placing the accused products in the stream of commerce with the expectation and knowledge that they will be purchased by consumers in Texas and elsewhere in the United States.

55. ADT purposefully directs or controls the making of accused products and their shipment to the United States, using established distribution channels, for sale in Texas and elsewhere within the United States.

56. ADT purposefully directs or controls the sale of the accused products into established United States distribution channels, including sales to nationwide retailers, wholesalers, distributors, and manufacturers (including, but not limited to, ADT’s various affiliated and related companies).

57. ADT purposefully directs or controls the sale of the accused products online and in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expects and intends that the accused products will be so sold.

58. ADT purposefully places the accused products—whether by itself or through subsidiaries, affiliates, or third parties—into an international supply chain, knowing that the accused products will be sold in the United States, including Texas. Therefore, ADT also facilitates the sale of the accused products in Texas.

59. ADT took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner that infringe claim 1 of the ’591 Patent, claim 13 of the ’856 Patent, and claim 21 of the ’618 Patent.

60. Such steps by ADT included, among other things, making or selling the accused products outside of the United States for importation into or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates’ behalf, to import, sell, or offer to sell the accused products in an infringing manner.

61. ADT performed these steps, which constitute induced infringement, with the knowledge of the ’591 Patent, the ’856 Patent, and the ’618 Patent, and with the knowledge that the induced acts would constitute infringement.

62. ADT performed such steps in order to profit from the eventual sale of the accused products in the United States.

63. ADT’s inducement is ongoing.

64. ADT has also indirectly infringed by contributing to the infringement of the ’591 Patent, the ’856 Patent, and the ’618 Patent. ADT has contributed to the direct infringement of the ’591 Patent, the ’856 Patent, and the ’618 Patent by the end user of the accused products.

65. The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the ’591 Patent, the ’856 Patent, and the ’618 Patent, including, for example, claim 1 of the ’591 Patent, claim 13 of the ’856 Patent, and claim 21 of the ’618 Patent.

66. The special features include, for example, hardware and/or software components especially adapted for capturing images using backside-illuminated image sensors, reconstructing missing data packets using error correction data, and categorizing, organizing, and presenting saved content data files, used in a manner that infringe the ’591 Patent, the ’856 Patent, and the ’618 Patent.

67. These special features constitute a material part of the invention of one or more of the claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

68. ADT’s contributory infringement is ongoing.

69. ADT has had actual knowledge of the ’591 Patent, the ’856 Patent, and the ’618 Patent at least as of August 20, 2026, when Interstate Patents sent a letter via FedEx and email to Jim DeVries, President and Chief Executive Officer of ADT’s parent company, ADT Inc., identifying Interstate Patents’ patent portfolio, including the ’591 Patent, the ’856 Patent, and the ’618 Patent, enclosing detailed claim charts showing how ADT’s products infringe each of them, and expressly stating that the letter was meant to constitute actual notice under 35 U.S.C. § 287(a). *See* Exhibit 4. ADT has also had knowledge of the ’591 Patent, the ’856 Patent, and the

’618 Patent at least as of the date when it was notified of the filing of this action. Since at least August 20, 2026, ADT has known the scope of the claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent, the products that practice the ’591 Patent, the ’856 Patent, and the ’618 Patent, and that Interstate Patents is the owner of the ’591 Patent, the ’856 Patent, and the ’618 Patent.

70. By the time of trial, ADT will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent.

71. Furthermore, ADT has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Interstate Patents’ patent rights. *See, e.g.*, M. Lemley, “Ignoring Patents,” 2008 Mich. St. L. Rev. 19 (2008).

72. ADT’s customers have infringed the ’591 Patent, the ’856 Patent, and the ’618 Patent. ADT encouraged its customers’ infringement.

73. ADT’s direct and indirect infringement of the ’591 Patent, the ’856 Patent, and the ’618 Patent has been, and/or continues to be willful, intentional, deliberate, and/or in conscious disregard of Interstate Patents’ rights under the patents-in-suit, including at least since ADT received Interstate Patents’ August 20, 2026 letter.

74. Interstate Patents has been damaged as a result of ADT’s infringing conduct alleged above. Thus, ADT is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

Interstate Patents hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

Interstate Patents requests that the Court find in their favor and against ADT, and that the Court grant Interstate Patents the following relief:

a. Judgment that one or more claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent have been infringed, either literally and/or under the doctrine of equivalents, by ADT and/or all others acting in concert therewith;

b. A permanent injunction enjoining ADT and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringing the ’591 Patent, the ’856 Patent, and the ’618 Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the ’591 Patent, the ’856 Patent, and the ’618 Patent by such entities;

c. Judgment that ADT account for and pay to Interstate Patents all damages to and costs incurred by Interstate Patents because of ADT’s infringing activities and other conduct complained of herein, including an award of all increased damages to which Interstate Patents is entitled under 35 U.S.C. § 284;

d. That Interstate Patents be granted pre-judgment and post-judgment interest on the damages caused by ADT’s infringing activities and other conduct complained of herein;

e. That this Court declare this an exceptional case and award Interstate Patents its reasonable attorney’s fees and costs in accordance with 35 U.S.C. § 285; and

f. That Interstate Patents be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Zachariah S. Harrington*

Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah
Texas Bar No. 24066017
rehan@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for Interstate Patents, LLC*